**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JEFFERY JEROME HARRIS;<br>SHARON DENISE FAILS;<br>TYRANCE HARRIS; and<br>HOLLY POWE,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:<br>1:26-cv-00184-JB-MU<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT**<br><br>28 U.S.C. §§ 1346(b), 2671-2680 |

## FIRST AMENDED COMPLAINT FOR DAMAGES

## PART I: PARTIES AND JURISDICTION

### A. Plaintiffs

1. Jeffery Jerome Harris is a citizen of the United States and a resident of Mobile County, Alabama, residing at 2054 Height Street, Mobile, AL 36605. Plaintiff is a Gulf War-era United States Marine Corps veteran (active duty July 19, 1999 to January 3, 2005). The VA reviewed Plaintiff's character of discharge and, upon finding that Plaintiff suffered from a circadian rhythm sleep disorder and an adjustment disorder during military service, changed Plaintiff's character of discharge from Bad Conduct to Honorable for VA purposes. The VA subsequently verified Plaintiff's toxic exposure risk activity (TERA) under the PACT Act and established Plaintiff's service-connected disabilities, including systemic lupus erythematosus, which the VA determined is presumptively connected to Plaintiff's military toxic exposure requiring no further nexus opinion.

Plaintiff carries ten service-connected disabilities. Plaintiff's military toxic exposure at Okinawa/Futenma included jet fuel (JP-8) containing benzene, toluene, ethylbenzene, xylenes, naphthalene, and other polycyclic aromatic hydrocarbons. Despite the VA's own toxic exposure screener confirming lupus as presumptive under the PACT Act based on Okinawa/Futenma service, the VBA overrode this determination by recording 'no TERA' three separate times. Plaintiff formally requested a Toxic Exposure Screening (TES) from the VA on June 21, 2025 (VA Secure Message ID: 7141516277, to Dr. Mouledous). The VA administratively declined. Plaintiff subsequently obtained the mandated PACT Act screening through civilian care via Alabama Medicaid, the cost of which was shifted from the VA to the Medicaid program. (Exs. I, U.)

2. Plaintiff was born in 1980 at Mobile, Alabama, to Sharon Denise Fails and Dock Powe (deceased). Plaintiff's gestation occurred from approximately February 1980 through November 1980. During this entire gestational period, Plaintiff's mother resided in the Africatown/Prichard corridor of Mobile County, Alabama. Plaintiff's residential timeline: 1980–1984, Africatown/Prichard corridor (Happy Hill projects / Josephine area); 1984–1997, Cleveland, Ohio (address: 556 East 114th Street); 1997–1998, Mobile, Alabama; 1998, entered military service. During 1984–1997, Plaintiff frequently returned to Mobile during holidays and summers.

3. Plaintiff Sharon Denise Fails is a citizen of the United States and a resident of Mobile County, Alabama, residing at 1900 Shelton Beach Road Ext., Apt. 1004, Mobile, Alabama 36618 (telephone (251) 298-1630; email hilllove58@yahoo.com). Plaintiff Fails is the biological mother of Plaintiffs Jeffery Harris, Tyrance Harris, and decedent Bobby Lee Hill Jr. Plaintiff Fails resided in the Africatown/Prichard corridor during her pregnancies with Jeffery Harris (1980) and Bobby Lee Hill Jr. (1984), and resided in

Cleveland, Ohio, during portions of her children's childhoods. Plaintiff Fails suffers from systemic lupus erythematosus, renal dysfunction, hematuria, and vascular fragility caused by cumulative environmental toxic exposure.

4. Plaintiff Tyrance Harris is a citizen of the United States and a resident of Mobile County, Alabama, residing at 3855 Autumndale Drive, Mobile, Alabama 36618 (telephone (251) 588-5228; email tarell2003@gmail.com). Plaintiff Tyrance Harris was born in 1975 in Cleveland, Ohio, to Sharon Denise Fails, and was exposed to prenatal lead in utero during his mother's residence in Cleveland. He resided in Cleveland during childhood and returned to Mobile, Alabama, as an adult. His VA Blue Button records document peripheral neuropathy, renal stress, chronic migraines, atopic dermatitis, psoriasis, and anemia—conditions caused by cumulative environmental toxic exposure.

5. Plaintiff Holly Powe is a citizen of the United States and a resident of Mobile County, Alabama, residing at 1117 North Dr. Martin Luther King Jr. Drive, Mobile, Alabama 36610 (telephone (251) 329-2371; email epowe676@gmail.com). Plaintiff Powe was born in 1974 in Mobile, Alabama, and has resided in the Africatown/Prichard corridor for most of her life. Plaintiff Powe is the half-sister of Plaintiff Jeffery Harris through their shared biological father, Dock Powe. Plaintiff Powe suffers from: congenital cervical fusion at C6-7 (documented CT December 11, 2015 and January 20, 2015, noting 'partial developmental fusion at C6-7 disc, facet joints and base of the spinous process' consistent with congenital origin); congenital coccyx deformity; ovarian cancer; liver dysfunction (elevated enzymes, hepatic cysts); kidney impairment (renal cysts, nephrolithiasis, recurrent infections); atherosclerosis; coronary artery calcification; degenerative disc disease; knee arthritis requiring total knee arthroplasty; and chronic gastrointestinal conditions—all caused by cumulative environmental toxic exposure during her gestation and lifelong residence

in the contaminated corridor.

**B. Defendant**

6. Defendant United States of America is sued under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, for the negligent acts and omissions of its agency, the Environmental Protection Agency (EPA), through EPA Region 4 (Atlanta, Georgia) and EPA Region 5 (Chicago, Illinois).

**C. Jurisdiction, Exhaustion, and Venue**

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1346(b)(1). The discretionary-function exception, 28 U.S.C. § 2680(a), does not bar this action. Under Berkovitz v. United States, 486 U.S. 531 (1988), that exception does not apply where a federal statute, regulation, or policy specifically prescribes a mandatory course of conduct that leaves the agency no room for judgment. EPA's duties here were mandatory and non-discretionary: 40 C.F.R. Part 58 and its Appendix D require the operation of a minimum ambient air-monitoring network, and EPA's Monitored Natural Attenuation policy (OSWER Directive 9200.4-17P) makes performance monitoring a mandatory precondition of any MNA remedy. EPA's approval of "natural attenuation" remedies at the Mobile-area underground-storage-tank sites with the required performance monitoring omitted violated that mandatory command and falls outside the discretionary-function exception. Separately, to the extent EPA and its delegated state program retained discretion over where to site ambient monitors, the exercise of that discretion—operating Alabama's sole lead monitor since 1979 at Troy (AQS 01-109-0003, near the Sanders Lead Company source, in a non-minority micropolitan area) while operating no lead monitor in the majority-Black Africatown/Prichard corridor of Mobile despite documented lead contamination—was not grounded in any

legitimate policy and is unprotected under United States v. Gaubert, 499 U.S. 315 (1991).

8. Plaintiffs fully exhausted administrative remedies. Plaintiffs filed SF-95 administrative claims with the EPA on July 1, 2025 ($500,000), July 28, 2025 ($130,000,000), and August 19, 2025 ($200,000,000). EPA Claim No. 24-FTCA-00124. As confirmed in writing by Kenneth A. Redden, Attorney-Advisor/Agency Claims Officer, U.S. EPA Civil Rights & Finance Law Office, the EPA proceeded with the August 19, 2025 claim for $200,000,000 as the operative claim (Redden email, August 20, 2025). The EPA issued a formal written denial of the FTCA claim on January 12, 2026 (Redden email: 'FTCA Denial Decision,' January 12, 2026 at 6:51 PM). This action is filed within six months of the written denial pursuant to 28 U.S.C. § 2675(a). EPA OIG Criminal Investigation Case No. 2025-6047-31 (Special Agent Michael Durnin, Durnin.Michael@epa.gov, (919) 637-0485) is pursuing a parallel criminal investigation validating the substantive allegations herein. (Exs. A, K.)

9. Venue is proper in the Southern District of Alabama under 28 U.S.C. § 1402(b) because Plaintiffs reside in Mobile County, Alabama, and the acts and omissions giving rise to this action occurred in Mobile County, Alabama. Related qui tam action Case No. 1:26-cv-73-TFM-MU (S.D. Ala.) is pending before this Court.

## PART II: STATEMENT OF FACTS

### A. The Cumulative Exposure Framework

10. Plaintiffs' injuries result from the cumulative burden of environmental toxicants—principally lead, benzene, and polycyclic aromatic hydrocarbons (PAHs)—acquired across multiple locations and decades. At each location, the EPA failed to exercise its monitoring, warning, and remediation duties.

11. The human body does not segment accumulated toxic burden by geographic source. Lead deposited in bone during childhood in Cleveland, Ohio; lead deposited in bone from lifelong residence in the Africatown/Prichard corridor of Mobile, Alabama; lead and PAHs absorbed during incarceration at Hamilton Work Release (Marion County, Alabama) and the Escambia County Jail (Brewton, Alabama); and the toxicants absorbed during military service—all acted upon the same biological systems through the same mechanisms: cytochrome P450 metabolic activation, oxidative stress, aryl hydrocarbon receptor-mediated inflammation, and cumulative deposition in bone and soft tissue.

12. Plaintiff Jeffery Harris's congenital hemivertebra at T7-8 formed during the specific gestational window of 4–6 weeks in utero (approximately March 1980), when Plaintiff's mother was living in the Africatown/Prichard corridor and absorbing lead from an environment EPA had left entirely unmonitored. This defect was documented by MRI on February 28, 2024 (USA Medical Center, Accession MR-24-0002958, radiologist Dr. Jeffrey Ryne Black/Vulcan Imaging Associates—at which time the hemivertebra was not identified despite visible dextroscoliosis and foraminal stenosis), by MRI on June 4, 2025, and definitively identified by MRI on January 29, 2026 (USA Medical Center, MRN 051444670, Accession MR-26-0002304, radiologist Brett S. Martin MD), which documented 'Redemonstrated partially segmented T7/8 hemivertebra with thoracic dextrocurvature'—the word 'redemonstrated' establishing the defect was present on the 2024 study but missed. Duke Spine Center confirmed the defect is congenital. Plaintiff was also born with a congenital inguinal hernia—a second congenital structural defect originating during the same unmonitored gestation. (Ex. I.)

13. Plaintiff Holly Powe's congenital cervical fusion at C6-7 and coccyx deformity formed during her gestation in 1974, when her mother resided in

the same Africatown/Prichard corridor, likewise unmonitored by EPA.

14. Bobby Lee Hill Jr.'s gestation occurred from approximately January 1984 through October 1984, during which his mother Sharon Denise Fails resided in the Africatown/Prichard corridor. His in utero development occurred in the same contaminated, unmonitored environment.

15. The presence of congenital spinal defects in half-siblings Jeffery Harris and Holly Powe—who share the same biological father (Dock Powe) but have different biological mothers, both of whom resided in the Africatown/Prichard corridor during their respective gestations—eliminates maternal genetics as an explanation. Additionally, Jeffery Harris's stepson—to whom Harris bears no biological relationship, having raised him from infancy—was diagnosed with an inguinal hernia, the same congenital defect Harris himself bears (see ¶12), having been born in the same Mobile industrial-contamination region, nearer the Chevron and Shell sites, an area likewise without ambient lead-air monitoring. Because no genetic line connects Harris to his stepson, the recurrence of the same congenital defect in the same unmonitored toxic environment implicates the shared environment—not heredity—as the transmitted cause: an environmentally transgenerational pattern. Dock Powe's Camp Lejeune exposure (Tarawa Terrace Housing, 1956–1957) provides a compounding paternal-line toxic exposure pathway.

16. The common element across all locations, all exposures, and all decades was EPA's systemic failure to protect the communities where Plaintiffs lived.

**B. The Africatown/Prichard Corridor — In Utero and Lifelong Exposure**

17. The Africatown and Prichard corridor of Mobile County, Alabama, is a historic Black community founded by survivors of the Clotilda, the last

documented transatlantic slave ship. Plaintiffs' family has lived in this corridor for five generations, documented by 1880 Alabama Federal Census records (FamilySearch citation: ark:/61903/3:1:33SQ-GYY8-3F9C, image 713 of 813, enumerated June 26, 1880). EPA's own EJSCREEN data (prior to its 2025 shutdown) identified toxic airborne respiratory hazard exposure in the 95th–100th percentile nationally. Soil contamination reached 300–3,000 times World Health Organization safe levels. (Ex. G.)

18. Plaintiff Jeffery Harris was conceived in approximately February 1980. His spinal column formed during the critical somite segmentation period at 4–6 weeks gestation, approximately March 1980. During this entire gestational period, EPA maintained no lead air monitor in the Africatown/Prichard corridor. In response to Plaintiff's Alabama Open Records Act request, ADEM confirmed in writing on July 16, 2025: 'NO RECORDS' exist for any air or soil lead monitoring data in the Africatown/Prichard corridor during the 1980–1984 period—including all air lead measurements from 248 Cox Street (AQS 01-097-1002), any soil lead data within 2 miles of International Paper, any Odell activity review documents for 1984, and any ADEM reports or permits for International Paper's Mobile mill from 1980–1984 (ADEM Open Records Response, July 16, 2025). A government agency's written confirmation that no monitoring records exist for the period of Plaintiffs' gestations is direct documentary evidence of the monitoring void alleged herein. (Ex. L.)

19. Bobby Lee Hill Jr. was conceived in approximately January 1984, with critical organ formation occurring at approximately February–March 1984, and full gestation spanning January through October 1984. During this gestational period, EPA continued to operate no adequate lead monitor in the Africatown/Prichard corridor.

20. Plaintiff Holly Powe's gestation occurred in 1974, with her congenital

cervical fusion and coccyx deformity forming during fetal development in the same corridor, likewise without any EPA monitoring.

21. EPA installed a lead-specific air monitor at 248 Cox Street, Mobile, Alabama, in 1981—the year after Plaintiff Jeffery Harris's birth. The monitor recorded detectable lead concentrations continuously from 1981 through 1990. Installation after Plaintiffs' births constitutes EPA's implicit acknowledgment that monitoring was warranted—monitoring that should have been in place during gestations but was not. (Ex. M.)

22. In 1990, EPA permanently discontinued the Cox Street lead monitor. From 1990 through 2002—twelve years—there was no lead-specific air monitor in Mobile County. EPA briefly operated a lead monitor at 650 Anthony Street, Mobile, from August 2002 through August 2003, then discontinued it. From August 2003 through the present—more than twenty-two years—there has been no lead-specific air monitor anywhere in Mobile County, Alabama. (Ex. M.)

23. Multiple UST releases occurred adjacent to Plaintiffs' family residences: the Dairy Fresh Corp site (509 South Craft Highway, Prichard, Facility ID 11337-097-001591, ADEM Master ID 13905/ALSI9949702, Borden Dairy Company)—benzene at 11 mg/L (11,000 µg/L) (MW-7, sampled Jan 18–20, 2022, per ARCADIS CP44), injection well remediation ongoing as late as December 2024; Stop N Go at 79 Dr. Martin Luther King Jr. Drive (ADEM Master ID 9544, Facility 25431-097-000816, incident November 28, 2012)—8.92 feet of free product; and Eddie's Mart (ADEM Form CP13, October 2021; ADEM CP21, January 2024, MTBE plume documented). EPA Region 4 approved Monitored Natural Attenuation (MNA) at these sites but installed zero vapor monitors in the adjacent residential neighborhood. (Exs. D–E.)

24. During the same period EPA abandoned lead monitoring in Mobile's

majority-Black Africatown/Prichard corridor, EPA maintained continuous lead monitoring in Troy, Alabama (Henderson Road monitor, Pike County)—a community approximately 60% White. The Troy monitor recorded lead values up to 29.54 μg/m³—nearly twenty times the NAAQS standard—from 1981 through at least 1992, while Mobile's monitor was abandoned in 1990. (Ex. N.)

25. A May 3, 2005, email from ADEM's Rachel Vines (EPA Memo #057910830; Ex. O) documents simultaneous approval of Chevron's well closure while ordering Shell to continue monitoring the same well—a documented 709-fold variance in benzene concentration between adjacent sites. The Chevron site served a minority community; the Shell site served a mixed community. This is direct documentary evidence of discriminatory enforcement of environmental monitoring requirements.

**C. Cleveland, Ohio — EPA Region 5**

26. During their childhoods, Plaintiffs Jeffery Harris, Tyrance Harris, and Bobby Lee Hill Jr. resided in Cleveland, Ohio, with their mother Sharon Denise Fails. Plaintiff Jeffery Harris's Cleveland address: 556 East 114th Street (near Glenville/Master Metals vicinity), Cleveland, Ohio; residency 1984–1997.

27. In 1993, EPA Region 5 documented severe airborne lead emissions from Master Metals, Inc. (2850 West 3rd Street, Cleveland, Ohio, EPA ID OHD097613871). Air monitors recorded concentrations including readings of 93.54 μg/m³—approximately sixty-two times the applicable NAAQS standard of 1.5 μg/m³. EPA Ambient Lead Report (April 27, 1993, EPA Memo #200322) documented daily lead concentrations ranging 0.86–117 μg/m³ at monitors near Master Metals. (Ex. F.)

28. Soil lead at and near Master Metals reached 115,000 ppm—approximately 287 times the residential clean-up standard of 400

ppm (Compliance Technologies Inc., January 21, 1991; Ecology & Environment Inc., August 13, 1992). Valley View Estates, approximately 1,500 feet northwest, housed approximately 500 children during this period. (Ex. F.)

29. EPA Region 5 accepted a settlement of approximately $537,040 (AOC 228788, October 23, 1997)—against an estimated cleanup cost of $3–7 million documented in EPA internal assessments (EPA Internal Memo Document ID 228775). Forty-eight PRPs paid an average of approximately $1,507 each. The site community is 71.8–90% minority with 43.4% in poverty (SDMS EPA Region 5 Demographic Analysis, Document ID 200847). (Ex. F.)

**D. Hamilton Work Release — Coal Ash (Jeffery Harris)**

30. Plaintiff Jeffery Harris was incarcerated at Hamilton Work Release in Marion County, Alabama, from 2016 to 2019. The Gorgas Steam Plant (Walker County, operated 1914–2019) stored over 40 million tons of coal ash in an unlined 420-acre Rattlesnake Lake impoundment. Alabama Power was fined $1.25 million in 2018 for groundwater contamination. During Gorgas closure activities beginning April 15, 2019, Plaintiff experienced documented air quality degradation characterized as 'ash,' followed by hematuria. No EPA air monitoring was conducted at or near Hamilton Work Release during this period. Incarcerated individuals cannot leave an exposure zone; EPA had a heightened duty of care to this captive population. (Exs. P, J.)

**E. Brewton, Alabama — Creosote and Dioxin (Jeffery Harris)**

31. Plaintiff Jeffery Harris spent approximately 18 months incarcerated at the Escambia County Jail in Brewton, Alabama. TR Miller Mill has conducted creosote operations since 1927—nearly a century. Coal tar creosote is 75–90% PAHs including benzo[a]pyrene (IARC Group 1

carcinogen). Georgia Pacific Brewton LLC reported 1,554,190 pounds of toxic on-site releases in 2020, including dioxin and dioxin-like compounds. No ATSDR health consultation has been conducted for Brewton; TR Miller Mill is not on the NPL despite similar facilities nationally generating 55 NPL listings. During incarceration, Plaintiff experienced nerve pain consistent with PAH exposure. These grievances are documented in Case 1:17-cv-00300-CG-B, Document 38-3, filed October 29, 2018, in this Court. (Ex. Q.)

### F. Military Service — Compounding Toxic Burden (Jeffery Harris)

32. Plaintiff's military occupational exposure at Okinawa/Futenma to JP-8 jet fuel containing benzene, toluene, ethylbenzene, xylenes, naphthalene, and PAHs acted upon the same biological systems as civilian exposures. The VA's TERA determination for Okinawa/Futenma service confirms toxic exposure risk activity. The toxic burden is cumulative and indivisible. The VA's own toxic exposure screener confirmed lupus is presumptive under the PACT Act, yet VBA overrode this determination three times by recording 'no TERA'—a pattern of institutional obstruction that mirrors EPA's monitoring failures.

### G. Plaintiffs' Documented Injuries

| **Category / Finding** | Condition / Documentation / Mechanism |
|---|---|
| **Congenital** | Hemivertebra T7-8 (MRI Jan 29, 2026, Accession MR-26-0002304; 'Redemonstrated' from 2024 study MR-24-0002958; confirmed Duke Spine Center) |
| **Congenital** | Congenital inguinal hernia (processus vaginalis closure failure during gestation) |
| **Autoimmune** | Systemic lupus erythematosus (SLE) — VA PACT Act presumptive; hydroxychloroquine 200mg ongoing |
| **Autoimmune** | Discoid lupus erythematosus (DLE) — Biopsy-confirmed June 7, 2021, Madelyn King MD; DermLab Accession DL21-37415, pathologist Danielle Wehle MD, confirmed by Michael K. Jacobs MD. Permanent facial disfigurement documented photographically August 2020 through January 2025. |

| | |
|---|---|
| **Autoimmune** | Rheumatoid arthritis; Sjögren's syndrome |
| **Vascular** | Vascular fragility — PAH-induced endothelial damage; SLE vasculitis |
| **Renal** | Renal dysfunction — lead nephropathy; SLE immune complex deposition |
| **Neurological** | Central and obstructive sleep apnea (UAB Sleep Lab, Dr. Patricia Patterson, July 28, 2024); Circadian rhythm sleep disorder (Quantico, October 4, 2001, Dr. Bricklin PsyD); Tinnitus; Vertigo; Peripheral nerve pain; ADHD |
| **Reproductive** | Erectile dysfunction and male infertility (USA Health, May 9, 2022: 0% motile forms, <16M count, very viscous semen; lead-induced nitric oxide pathway disruption) |
| **Surgical** | Failed C3-C6 ACDF (Aug 30, 2024); failed revision (Oct 25, 2024); pseudarthrosis (Dr. Richard Menger, July 2025); hardware lucency C3/C4/C6 (CT July 8, 2025 CT-25-0059863; CT Dec 11, 2025 CT-25-0111085); corrective surgery required |

33. Plaintiff's discoid lupus erythematosus was biopsy-confirmed June 7, 2021, Madelyn King MD, Mobile Dermatology P.C. (DermLab Accession DL21-37415, pathologist Danielle Wehle MD, confirmed by Michael K. Jacobs MD). Plaintiff suffers permanent facial disfigurement from discoid lupus scarring documented photographically August 29, 2020 through January 22, 2025. All Mobile Dermatology visits and Labcorp panels billed through Alabama Medicaid—care the VA was mandated to provide under the PACT Act and refused. (Exs. I, R.)

34. Sharon Denise Fails suffers from systemic lupus erythematosus, renal dysfunction, hematuria, and vascular fragility caused by cumulative lead, benzene, and PAH exposure during her lifelong residence in the Africatown/Prichard corridor and years in Cleveland, Ohio.

35. Tyrance Harris suffers from peripheral neuropathy, renal stress, chronic migraines, atopic dermatitis, psoriasis, and anemia caused by cumulative lead, benzene, and PAH exposure, including prenatal lead exposure (Cleveland, 1975).

| **Category / Finding** | Condition / Documentation / Mechanism |
|---|---|
| **Stage IV CKD / Kidney** | |

| | |
|---|---|
| **Failure** | Admission creatinine 4.79, rising to 6.85 mg/dL. BUN 48-53. Lead nephropathy from cumulative bone lead (Mobile + Cleveland). Negative ANA/dsDNA/ANCA June 6, 2023 — confirming toxic, not autoimmune, etiology. |
| **Congestive Heart Failure** | Cardiomegaly (chest X-ray June 27, 2025, Dr. James Zimmerman MD); bilateral pleural effusions; pulmonary edema. Home medications: carvedilol, furosemide, valsartan. |
| **Treatment-Resistant Hypertension** | BP 230/140 on EMS arrival. 7-drug antihypertensive regimen: amlodipine 10mg + carvedilol + furosemide + hydralazine 50mg TID + valsartan + sodium bicarbonate + tadalafil. |
| **Right Thalamic Hemorrhage** | Right thalamic intraparenchymal hemorrhage, epicenter 3.8cm, 9-10mm right-to-left midline shift. ICH Score: 5 (near-certain mortality). CTA Dr. David Lamar MD June 26, 2025: 'Location of hemorrhage is typical of a hypertensive bleed rather than posttraumatic.' |
| **Brain Death** | Pronounced June 28, 2025 at 13:58 hours. Nuclear medicine cerebral blood flow study: 'No intracranial vascular flow compatible with brain death' (Dr. Jim Gray MD). |
| **Death** | June 29, 2025, age 40. Medical Examiner: Brandy Shattuck MD, Case No. 251098-MLO, Escambia County, Florida. Insurance status: Self-Pay. |

| **Category / Finding** | Condition / Documentation / Mechanism |
|---|---|
| **Congenital cervical fusion C6-7** | CT documented December 11, 2015 and January 20, 2015: 'partial developmental fusion at C6-7 disc, facet joints and base of the spinous process' — congenital origin confirmed. 1974 gestation in Africatown corridor. |
| **Congenital coccyx deformity** | In utero toxic exposure during fetal development, 1974 gestation, Africatown corridor. |
| **Ovarian cancer** | Benzene and PAH exposure (IARC Group 1 carcinogens). Thomas Hospital labs (Dr. Joshua Symes): lymphocyte absolute 0.93 (low) — immune suppression marker. |
| **Liver dysfunction / Kidney impairment** | Elevated enzymes, hepatic cysts; renal cysts, nephrolithiasis, recurrent infections. VOC, PAH, and lead nephrotoxicity. |
| **Atherosclerosis / CAC / Degenerative disease** | Lead and PAH vascular and skeletal toxicity. Total knee arthroplasty required. Chronic GI conditions. |

36. Amy Powe died in 2016–2017 from cancer caused or substantially contributed to by benzene, PAH, and VOC exposure during her residence in the Africatown/Prichard corridor, including on Allenby Street.

## H. Expert Support

37. Plaintiffs have consulted with Dr. Aaron Specht, Assistant Professor of Health Physics at Purdue University, Visiting Scientist at the Harvard T.H. Chan School of Public Health, and Director of the NIEHS Trace Metals Lab. Dr. Specht is a board-certified medical physicist with over 15 years of lead exposure research experience, who has measured bone lead in over 40,000 individuals, published more than 70 peer-reviewed publications, and been accepted as an expert at trial in Flint Water Crisis litigation. Dr. Specht has expressed willingness to conduct bone lead testing on Plaintiffs in Mobile, Alabama, and to testify regarding his findings. (Ex. S.)

38. Plaintiffs have also corresponded with Dr. Aaron Reuben of Duke University, a co-author of McFarland, Reuben & Hauer, Contribution of Childhood Lead Exposure to Psychopathology in the US Population Over the Past 75 Years, 66 J. Child Psychol. & Psychiatry 659 (2024), which estimates that childhood exposure to lead from leaded gasoline is attributable for approximately 151 million excess mental disorders in the United States population. That study provides the scientific framework connecting long-term environmental lead exposure to chronic disease at the population level. (Ex. T.)

**I. Discovery and Accrual — Statute of Limitations**

39. Plaintiffs' injuries manifested over years, with serious conditions emerging between 2022 and 2025. Plaintiffs were unaware of any environmental cause; treating physicians did not attribute conditions to environmental exposure.

40. Through public records research prompted by the 2024 McFarland et al. study, Plaintiffs discovered: (a) EPA had no lead monitor during Plaintiffs' gestations; (b) the Cox Street monitor was installed after Plaintiffs' births and abandoned in 1990; (c) multiple UST benzene releases existed adjacent to family residences; (d) EPA approved MNA without

vapor monitoring; and (e) the Rachel Vines memorandum documented racially disparate enforcement. This information was not reasonably discoverable before 2024–2025.

41. Plaintiff Jeffery Harris's August 2024 ACDF surgery and subsequent hardware failure led to spinal imaging that revealed the congenital hemivertebra at T7-8 for the first time. Duke Spine Center confirmed congenital origin. Bobby Lee Hill Jr.'s death on June 29, 2025, at age 40 from hypertensive cerebral hemorrhage with Stage IV CKD prompted further investigation into shared environmental exposures. (Ex. H.)

42. Plaintiffs' claims accrued no earlier than late 2024 to March 2025. Plaintiffs filed SF-95 administrative claims July 1, 2025, July 28, 2025, and August 19, 2025 ($200,000,000)—the operative claim on which EPA proceeded (EPA Claim No. 24-FTCA-00124). EPA issued written denial January 12, 2026. This action is filed within six months of the written denial and is timely under 28 U.S.C. § 2401(b).

## PART III: CAUSES OF ACTION

### COUNT I:NEGLIGENT FAILURE TO MONITOR AND REMEDIATE — MOBILE, ALABAMA (EPA REGION 4)

(All Plaintiffs)

43. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

44. EPA owed a duty to Plaintiffs and similarly situated residents of the Africatown/Prichard corridor to exercise reasonable care in monitoring air quality, investigating known contamination, warning affected communities, and remediating hazardous releases. These duties arise under the Clean Air Act, 42 U.S.C. §§ 7401 et seq.; CERCLA § 104(a), 42 U.S.C. § 9604(a); 40 C.F.R. Part 58; and Title VI of the Civil Rights Act, 42 U.S.C. § 2000d.

Independently, EPA affirmatively undertook to monitor and remediate identified contamination at the Dairy Fresh underground-storage-tank site (ADEM Master ID 13905) through an approved Monitored Natural Attenuation remedy; having voluntarily undertaken that monitoring, EPA assumed a duty of reasonable care under Alabama's voluntary-undertaking doctrine, under which one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care, United States Fidelity & Guaranty Co. v. Jones, 356 So. 2d 596 (Ala. 1977); accord Restatement (Second) of Torts § 324A—and performed it negligently by omitting the required monitoring, thereby increasing the risk of harm to adjacent residents and inducing their reliance on the adequacy of the remedy. This voluntary undertaking supplies the private-person analogue required by 28 U.S.C. § 1346(b)(1) and United States v. Olson, 546 U.S. 43 (2005). (Exs. D–E.)

45. EPA breached these duties by: (a) failing to install any lead air monitor during Plaintiffs' gestations despite known industrial sources; (b) installing the Cox Street monitor in 1981 after births; (c) permanently discontinuing the Cox Street monitor in 1990 without replacement; (d) approving MNA at UST sites without vapor monitoring; (e) failing to operate any NATTS, NCore, PAMS, or IMPROVE monitoring station in Mobile; (f) maintaining monitoring in Troy (majority-White) while abandoning Mobile (majority-Black); (g) applying inconsistent enforcement standards documented in the Rachel Vines memorandum; and (h) failing to warn Plaintiffs or the community of known contamination. These breaches are corroborated by ADEM's own State of Alabama Ambient Air Monitoring 2024 Network Plan (June 28, 2024): Mobile County's ambient monitors measure only ozone, PM2.5, sulfur dioxide, and—as of July 1, 2024—PM10, and include no lead monitor of any kind, while Alabama's sole lead monitor operates at Troy (AQS 01-109-0003) in Pike County. That same plan

proposes relocating the Chickasaw monitor (AQS 01-097-0003) to Africatown in 2025 using Inflation Reduction Act funds—a belated acknowledgment that the Africatown/Prichard corridor had been left unmonitored. (Exs. B, C, N, O.)

46. These breaches proximately caused Plaintiffs' congenital defects, cumulative toxic burden, and resulting injuries. Had EPA monitored adequately, maternal lead exposure would have been detected and remediation or relocation undertaken. The Discretionary Function Exception does not apply: CERCLA § 104(a) uses mandatory 'shall' language; 40 C.F.R. Part 58 imposes mandatory monitoring requirements; and EPA's abandonment of an existing monitoring network in a documented contamination corridor is ministerial failure, not policy judgment. See Berkovitz v. United States, 486 U.S. 531, 536 (1988).

## COUNT II:NEGLIGENT FAILURE TO MONITOR AND CONTROL EMISSIONS — CLEVELAND, OHIO (EPA REGION 5)

(Jeffery Harris, Sharon Denise Fails, Tyrance Harris)

47. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

48. EPA Region 5 breached duties to Plaintiffs by: (a) failing to ensure adequate monitoring of airborne lead from Master Metals during Plaintiffs' childhood residence; (b) accepting a grossly inadequate settlement ($537,040 against $3–7 million cleanup cost) that failed to ensure remediation; and (c) failing to enforce protective measures sufficient to prevent childhood lead exposure to the 500+ children residing within 1,500 feet of 115,000 ppm soil lead and 93.54 μg/m³ air lead. As a direct and proximate result, Plaintiffs suffered childhood lead exposure that accumulated in bone tissue and contributed to cumulative lifetime lead burden causing and exacerbating all conditions identified herein.

**COUNT III:NEGLIGENT FAILURE TO MONITOR — GORGAS STEAM PLANT COAL ASH (EPA REGION 4)**

(Jeffery Harris)

49. Plaintiffs incorporate all preceding allegations. EPA breached its duty by failing to require air quality monitoring at or near Hamilton Work Release during the Gorgas Steam Plant closure and decommissioning activities in 2019, resulting in Plaintiff's coal ash exposure, acute hematuria, and erectile dysfunction. Incarcerated individuals who cannot leave an exposure zone constitute a captive population to whom EPA owed a heightened duty of care.

**COUNT IV:NEGLIGENT FAILURE TO MONITOR AND ASSESS — BREWTON CREOSOTE AND DIOXIN (EPA REGION 4)**

(Jeffery Harris)

50. Plaintiffs incorporate all preceding allegations. EPA breached duties by: (a) failing to list TR Miller Mill on the NPL despite nearly a century of creosote operations; (b) failing to conduct an ATSDR health consultation for Brewton; (c) failing to conduct cancer cluster investigations; (d) failing to conduct cumulative impact assessments; and (e) failing to monitor PAHs and dioxins in Brewton. As a direct result, Plaintiff suffered PAH exposure contributing to vascular damage, kidney damage, and nerve pain during incarceration.

**COUNT V:NEGLIGENCE — CUMULATIVE EXPOSURE AND COMPOUNDING HARM**

(All Plaintiffs)

51. Plaintiffs incorporate all preceding allegations. Plaintiffs' injuries are indivisible across exposure locations and EPA Regions. EPA's negligence at each location compounded harm from negligence at every other location. EPA's systemic failure across Regions and decades—the consistent pattern

of not monitoring, not warning, and not remediating in communities where Plaintiffs lived—was the proximate cause of Plaintiffs' cumulative toxic burden and resulting injuries.

## PART IV: DAMAGES

52. Plaintiffs seek compensatory damages for past and future medical expenses, pain and suffering, loss of enjoyment of life, physical impairment and permanent disability, lost earning capacity, and mental anguish, in amounts to be proven at trial.

53. Plaintiff Jeffery Jerome Harris additionally seeks damages for permanent cosmetic disfigurement caused by discoid lupus erythematosus—an independent and separately compensable element of personal injury damages under Alabama law. Plaintiff's treating dermatologist documented on June 7, 2021: 'well-demarcated atrophic plaques with scale and scarring' and that the 'course is chronic.' Photographic evidence spanning August 29, 2020 through January 22, 2025 documents active pustular flares, cicatricial alopecia with permanent hair loss, multi-site involvement on face/scalp/chest/extremities, and residual chronic skin changes. (Ex. R.)

54. Plaintiff Jeffery Harris additionally seeks damages for VA cost-shifting: Alabama Medicaid paid for care the VA was mandated to provide under the PACT Act (documented October 2019–September 2025, Medicaid Recipient ID ending in 9200). These include inpatient hospitalization costs, surgical costs, and all care the VA administratively declined to authorize. (Ex. U.)

55. Plaintiffs have engaged Dr. Aaron Specht to perform bone lead testing via portable XRF to quantify cumulative lifetime lead burden. Plaintiffs reserve the right to supplement damages based on testing results.

## PART V: PRAYER FOR RELIEF

56. Enter judgment against Defendant United States of America on all counts;

57. Award Plaintiffs compensatory damages in amounts to be proven at trial;

58. Award Plaintiffs costs of suit, including expert witness fees and litigation expenses;

59. Refer appropriate evidence to the Department of Justice and EPA Office of Inspector General for investigation of potential False Claims Act violations consistent with EPA OIG Criminal Investigation Case No. 2025-6047-31 (Special Agent Michael Durnin); and

60. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 16th day of July, 2026.


/s/ Jeffery Jerome Harris
Jeffery Jerome Harris, Plaintiff, Pro Se
2054 Height Street, Mobile, Alabama 36605
(228) 819-0118 | harrisjeffery04@gmail.com
Date: July 16, 2026

/s/ see attached Verification (signed under penalty of perjury)
Sharon Denise Fails, Plaintiff, Pro Se
Address: 1900 Shelton Beach Road Ext., Apt. 1004, Mobile, Alabama 36618
Phone: (251) 298-1630 | Email: hilllove58@yahoo.com
Date: July 16, 2026

/s/ see attached Verification (signed under penalty of perjury)
Tyrance Harris, Plaintiff, Pro Se
Address: 3855 Autumndale Drive, Mobile, Alabama 36618
Phone: (251) 588-5228 | Email: tarell2003@gmail.com

Date: July 16, 2026

/s/ see attached Verification (signed under penalty of perjury)

Holly Powe, Plaintiff, Pro Se
Address: 1117 North Dr. Martin Luther King Jr. Drive, Mobile, Alabama 36610
Phone: (251) 329-2371 | Email: epowe676@gmail.com
Date: July 16, 2026

**Certificate of Service**

I hereby certify that on this 16th day of July, 2026, a true and correct copy of the foregoing First Amended Complaint was served on the United States Attorney for the Southern District of Alabama, the Attorney General of the United States, and the Administrator of the EPA by certified mail, return receipt requested, addressed to:

United States Attorney's Office, Southern District of Alabama, 63 South Royal Street, Suite 600, Mobile, AL 36602

Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530

Administrator, U.S. Environmental Protection Agency, 1200 Pennsylvania Avenue, NW, Washington, DC 20460

/s/ Jeffery Jerome Harris

Jeffery Jerome Harris, Plaintiff, Pro Se

/s/ Jeffery Jerome Harris

Jeffery Jerome Harris, Plaintiff, Pro Se

# EXHIBIT LIST

**Ex. A** SF-95 administrative claims (July 1, July 28, and August 19, 2025), Redden operative-claim confirmation (August 20, 2025), and EPA written denial (January 12, 2026) — EPA Claim No. 24-FTCA-00124 [8, 42 EPA / Plaintiff HARRIS-FTCA-______]

**Ex. B** ADEM, State of Alabama Ambient Air Monitoring 2024 Network Plan (June 28, 2024) — Mobile network; no lead monitor; Troy (01-109-0003) sole state Pb monitor; Chickasaw→Africatown relocation [7, 24, 45 ADEM (public) HARRIS-FTCA-______]

**Ex. C** EPA AirData annual monitor records, Mobile County (FIPS 01-097), 2021–2023 (no lead monitor operated) [7, 45 EPA (public) HARRIS-FTCA-______]

**Ex. D** ADEM UST file, Dairy Fresh (UST100902 / Master ID 13905 / ALSI9949702), incl. ARCADIS groundwater report (benzene 11 mg/L, MW-7, per CP44) and August 2023 monitoring-well data [23, 44 ADEM (public) HARRIS-FTCA-______]

**Ex. E** ADEM UST files, Stop N Go (Master ID 9544) and Eddie's Mart (Form CP13 / CP21) — free-product gauge and MTBE groundwater plume [23, 44 ADEM (public) HARRIS-FTCA-______]

**Ex. F** EPA Region 5 Master Metals record set (EPA ID OHD097613871): 1993 EPA Ambient Lead Report (Memo #200322); soil-lead reports (Compliance Technologies 1/21/1991; Ecology & Environment 8/13/1992); AOC 228788 (10/23/1997) & Internal Memo #228775; SDMS Demographic Analysis #200847 [27–29 EPA (public) HARRIS-FTCA-______]

**Ex. G** U.S. Census (1880; FamilySearch ark:/61903/3:1:33SQ-GYY8-3F9C) and EPA EJScreen demographic / EJ report — Africatown/Prichard census tract(s) [17, 45 Census / EPA (public) HARRIS-FTCA-______]

**Ex. H** District One Medical Examiner report, Bobby Lee Hill Jr. (Case 251098-MLO), and exposure history [14, 41 D1 ME / Plaintiff HARRIS-FTCA-______]

**Ex. I** Plaintiffs' medical records — J. Harris (VA/SLE/PACT-Act TERA; TES request VA Msg 7141516277; MRIs MR-24-0002958 & MR-26-0002304; Duke Spine); S. Fails; T. Harris; H. Powe (congenital and chronic conditions) [1–5, 12, 15, 32–36 Plaintiffs HARRIS-FTCA-______]

**Ex. J** Related dockets — U.S. ex rel. Harris v. Chevron, 1:26-cv-73-TFM-MU (S.D. Ala.); Harris v. ExxonMobil, 1:25-cv-00414-PAB (N.D. Ohio); Mobile Baykeeper v. Alabama Power (11th Cir., 5/18/2026) [8–9, 30 Court records HARRIS-FTCA-______]

**Ex. K** EPA OIG referral / correspondence — Criminal Investigation Case No. 2025-6047-31 (SA Michael Durnin) [8, 59 EPA OIG / Plaintiff HARRIS-FTCA-______]

**Ex. L** ADEM Open Records Response (July 16, 2025) — written "NO RECORDS" confirmation of any air/soil lead monitoring in the Africatown/Prichard corridor, 1980–1984 [18 ADEM (public) HARRIS-FTCA-______]

**Ex. M** EPA AQS / AirData lead-monitor site history — 248 Cox Street (AQS 01-097-1002; installed 1981 / discontinued 1990) and 650 Anthony Street (Aug 2002–Aug 2003) [21–22 EPA (public) HARRIS-FTCA-______]

**Ex. N** EPA AQS lead-monitor record — Troy / Henderson Road (AQS 01-109-0003, Pike County; values to 29.54 $\mu g/m^3$, 1981–1992) [24, 45 EPA (public) HARRIS-FTCA-______]

**Ex. O** Rachel Vines / ADEM memorandum (May 3, 2005; EPA Memo #057910830) — Chevron well closure vs. Shell continued monitoring; 709-fold benzene variance [formerly cited "Ex. 149A"] [25, 40, 45 ADEM / EPA (public) HARRIS-FTCA-______]

**Ex. P** Gorgas Steam Plant / Alabama Power coal-ash records — CCR impoundment (Rattlesnake Lake); 2018 $1.25M groundwater-contamination penalty; 2019 closure/decommission [30 ADEM / Ala. Power (public) HARRIS-FTCA-______]

**Ex. Q** Brewton documentary set — TR Miller Mill creosote history; Georgia-Pacific Brewton 2020 TRI (1,554,190 lbs, incl. dioxin); Case 1:17-cv-00300-CG-B, Doc. 38-3 (10/29/2018) [31 EPA TRI / Court HARRIS-FTCA-______]

**Ex. R** Discoid lupus documentation — DermLab biopsy DL21-37415 (June 7, 2021) and dated clinical photographs (Aug 29, 2020–Jan 22, 2025) [33, 53 Plaintiff HARRIS-FTCA-______]

**Ex. S** Dr. Aaron Specht — CV / credentials and correspondence re: portable-XRF bone-lead testing and testimony [37, 55 Expert / Plaintiff HARRIS-FTCA-______]

**Ex. T** McFarland, Reuben & Hauer (2024), 66 J. Child Psychol. & Psychiatry 659 — leaded-gasoline psychopathology-burden study [38 Published literature HARRIS-FTCA-______]

**Ex. U** VA / PACT-Act cost-shift documentation — Alabama Medicaid payment records (Recipient ID ending in 9200; Oct 2019–Sep 2025) [1, 54 Ala. Medicaid / Plaintiff HARRIS-FTCA-______]

## VERIFICATIONS

### VERIFICATION OF JEFFERY JEROME HARRIS

I, Jeffery Jerome Harris, declare under penalty of perjury under the laws of the United States of America that I am a Plaintiff in the above-captioned action; that I have read the foregoing First Amended Complaint for Damages; and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed this 16th day of July, 2026, at 8:00 PM, Alabama.

/s/ [signature]
JEFFERY JEROME HARRIS, Plaintiff, Pro Se

### VERIFICATION OF SHARON DENISE FAILS

I, Sharon Denise Fails, declare under penalty of perjury under the laws of the United States of America that I am a Plaintiff in the above-captioned action; that I have read the foregoing First Amended Complaint for Damages; and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed this 14 day of July, 2026, at 5:51 p.m., Alabama.

/s/ Sharon Denise Fails
SHARON DENISE FAILS, Plaintiff, Pro Se

### VERIFICATION OF TYRANCE HARRIS

I, Tyrance Harris, declare under penalty of perjury under the laws of the United States of America that I am a Plaintiff in the above-captioned action; that I have read the foregoing First Amended Complaint for Damages; and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed this 01 day of July, 2026, at Mobile, Alabama.

/s/ T. Harris
TYRANCE HARRIS, Plaintiff, Pro Se

### VERIFICATION OF HOLLY POWE

I, Holly Powe, declare under penalty of perjury under the laws of the United States of America that I am a Plaintiff in the above-captioned action; that I have read the foregoing First Amended Complaint for Damages; and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed this 02 day of July, 2026, at Mobile, Alabama.

/s/ Holly Powe
HOLLY POWE, Plaintiff, Pro Se