**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**JEFFERY JEROME HARRIS; SHARON DENISE FAILS; TYRANCE HARRIS; and HOLLY POWE,**
**Plaintiffs,**
**vs.**
**UNITED STATES OF AMERICA,**
**Defendant.**

**Civil No. 1:26-cv-00184-JB-MU**

**UNITED STATES' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

Defendant the United States of America (the United States) hereby moves pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Plaintiffs Jeffery Jerome Harris, Sharon Denise Fails, Tyrance Harris and Holly Powe's (collectively, the Plaintiffs) Third Amended Complaint ("TAC" or the "Complaint")[1] [Doc. 32, PageID. 1259-87].

## INTRODUCTION

Plaintiffs do not claim injuries caused by a specific wrongful act or omission of the United States. Rather, Plaintiffs allege that throughout multiple cities and decades, the United States Environmental Protection Agency (EPA) failed to monitor, warn, and remediate for multiple toxins—primarily lead, benzene, and polycyclic aromatic hydrocarbons (PAHs)—causing an accumulation of injuries. Plaintiffs' claims for negligence brought under the Federal Tort Claims Act (FTCA) fail for two reasons: (1) Plaintiffs claims are time-barred and (2) Plaintiffs fail to meet

[1] Plaintiffs filed their Third Amended Complaint on October 26, 2026, as the Second Amended Complaint. For clarity on the docket, the United States notes that the most recent amended complaint is Plaintiffs' Third Amended Complaint, following their initial complaint (May 26, 2026), their First Amended Complaint (June 3, 2026) and their the Second Amended Complaint (July 16, 2026).

Fed. R. Civ. P. 8(a)(2)'s pleading standard because the Complaint does not identify a mandatory and specific directive by which the discretionary function exception of the FTCA would not apply. *See* 28 U.S.C. §§ 1346(b)(1) & 2674. Accordingly, the Court lacks subject matter jurisdiction.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### I. Procedural History

Plaintiffs reside in Mobile County, Alabama, and previously resided in Cleveland, Ohio. *See* TAC ¶¶ 1-5 [Doc. 32, PageID. 1259-61]. On July 1, 2025, Plaintiff Jeffery Harris submitted a SF-95 administrative claim with the EPA's Region 4 Office of Regional Counsel. Exhibit 1 (July 1, 2025, SF-95 Administrative Claim). The claim demanded $500,000 in damages for severe lead exposure and contamination from 1984 to 1997, stemming from the EPA's alleged failure to prevent lead migration from the Master Metals, Inc. Superfund site in Cleveland. On July 28, 2025, Plaintiff Jeffery Harris (1) amended his claim, (2) added five claimants—Holly Powe, Tyrance Harris, Sharon Denise Fails, the Estate of Bobby Lee Hill Jr., and the Estate of Amy Powe—to the claim, (3) made additional claims against the EPA, the Alabama Department of Environmental Management (ADEM), and the Ohio Environmental Protection Agency (Ohio EPA). Exhibit 2 (July 28, 2025, SF-95 Amended Administrative Claim) and (4) Plaintiff Jeffery Harris named himself as the "point of contact" for all claimants. *Id.* On August 19, 2025, Plaintiff Jeffery Harris amended all claims for a second time alleging new evidence that would support their negligence claims against the EPA. Exhibit 3 (August 19, 2025, SF-95 Amended Administrative Claim).

All claims were denied on November 14, 2025. Pursuant to 40 C.F.R. § 10.6(a), the EPA mailed a denial letter to Plaintiff Jeffery Harris, denying his claim. Exhibit 4 (EPA's SF-95 Administrative Claim Denial Letter); *see also* Exhibit 5 (EPA's Email Confirming Mailing of Letter). The denial letter was sent to the address provided by Plaintiff Jeffery Harris and was returned to the EPA on December 2, 2025., Exhibit 6 (United States Postal Service Confirming Return to Sender). The

EPA then emailed Plaintiff Jeffery Harris on January 12, 2026, providing a copy of the mailed letter stating that the EPA attempted to deliver the letter via certified mail, but their efforts were unsuccessful. Exhibit 7 (EPA's Email to Plaintiffs Regarding Denial Letter).

Plaintiffs then filed a Complaint on May 26, 2026, asserting negligence under the FTCA, claiming injuries related to the EPA's alleged negligent failure to monitor, remediate, and warn of air and soil pollutants throughout multiple decades and locations. (Doc. 1, PageID. 1-25). Plaintiffs then filed an Amended Complaint on June 3, 2026, with additional allegations. (Doc. 5, PageID. 34-58). In response to the filing, the Court issued an Order, stating that the Amended Complaint needed to be refiled with signature of all the Plaintiffs, as required by General L.R. 5, and ordering Plaintiffs: (a) to clarify the formally appointed executor or personal representative of the Estate of Amy Powe, and to verify that no additional beneficiaries or outstanding creditors exist for the Estates of Amy Powe and Bobby Lee Hill, Jr.; or (b) to obtain counsel by July 17, 2026. (Doc. 6, PageID. 59-62). On July 16, 2026, Plaintiffs filed their Second Amended Complaint, which removed the Estate of Bobby Lee Hill Jr. and the Estate of Amy Powe as Plaintiffs in the matter. (Doc. 7, PageID. 63-88).

The United States filed its Motion to Dismiss (Doc. 12, PageID. 95-119) on July 30, 2026, and briefing on the Motion was completed September 3, 2026. *See* Doc. 14, PageID. 146-161; Doc. 15, PageID 182-193. The Court then scheduled a Motion Hearing for October 19, 2026 (Doc. 23). Five days before the hearing, Plaintiffs filed a motion for leave to file an amended complaint (Doc. 26, PageID. 824-827) with an attached proposed amended complaint (Doc. 26_1, PageID. 828-858), narrowing the claims. However, on October 19, 2026, Plaintiffs filed a substantially different Third Amended Complaint, leading the Court to strike Plaintiffs' amended complaint and ordering Plaintiffs to file the proposed amended complaint appearing at Doc. 26_1, with no changes, by

October 26, 2026. (Doc. 31). On October 26, 2026, Plaintiffs filed the instant Complaint. (Doc. 32).

## II. Factual Background

Plaintiffs claim that the EPA had a mandatory directive to enforce air monitoring and remediation, investigate known contaminants, warn affected communities and remediate hazardous releases in Cleveland, Ohio, and Mobile, Alabama, over the course of several decades under the Clean Air Act, 42 U.S.C. §§ 7401 et seq; the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 104(a), 42 U.S.C. § 9604(a); EPA Regulations, 40 C.F.R. § 58; and Title VI of the Civil Rights Act, 42 U.S.C. § 2000d. TAC ¶ 44 (Doc. 32, PageID. 1275).

Plaintiffs allege that the EPA's failure to abide by this "mandatory directive" led to Plaintiffs' injuries. Plaintiffs Holly Powe and Jeffery Harris allege their congenital birth defects were the result of in utero lead absorption in 1974 and 1980, respectively, in the Africatown/Prichard corridor in Mobile. TAC ¶¶ 12, 13 (Doc. 32, PageID. 1264-65). Plaintiff Holly Powe also alleges that she suffers from ovarian cancer, liver dysfunction, kidney impairment, atherosclerosis, coronary artery calcification, degenerative disc disease, knee arthritis requiring a total knee arthroplasty, and chronic gastrointestinal conditions, all due to cumulative toxic exposure. TAC ¶ 5 (Doc. 32, PageID. 1261). Plaintiff Jeffery Harris alleges additional unspecified injuries related to cumulative exposure to lead, benzene, and PAHs during his life in Mobile County, his incarceration at Hamilton Work Release (Marion County, Alabama) and Escambia County Jail (Brewton, Alabama) and his military service in various locations.[2] TAC ¶ 1, 11 (Doc. 32, PageID. 1259-60, 1264).

---

[2] To the extent Plaintiff Jeffery Harris alleges injuries resulting from his military service, such claims are barred under *Feres v. United States,* 340 U.S. 135 (1950) ("[T]he Government is not

Plaintiff Sharon Denise Fails alleges that her injuries—systemic lupus erythematosus, renal dysfunction, hematuria, and vascular fragility—are due to a cumulative exposure to lead, benzene and PAHs during her lifetime in the Africatown/Prichard corridor of Mobile, Alabama, and Cleveland, Ohio. TAC ¶ 34 (Doc. 32, PageID. 1272). Plaintiff Tyrance Harris attributes his injuries—peripheral neuropathy, renal stress, chronic migraines, atopic dermatitis, psoriasis, and anemia—to cumulative exposure to lead, benzene and PAH exposure in Mobile, Alabama, and Cleveland, Ohio. Plaintiff Tyrance Harris also alleges in utero lead exposure in 1975 stemming from the EPA failure to monitor for lead. TAC ¶ 4 (Doc. 32, PageID. 1261).

### A. Plaintiffs Allege Toxic Environmental Exposure Due to a Lack of Air Monitoring as Required by the Clean Air Act.

Plaintiffs' allegations against the United States primarily rest on their contention that the EPA violated the Clean Air Act when it failed to install and maintain air monitors in Mobile County, Alabama, and Cleveland, Ohio starting in the 1970s, when Plaintiffs periodically resided in or visited those areas. Plaintiffs allege that the EPA's failure to monitor, investigate and warn under the CAA, lead to a cumulative toxic environmental exposure that caused their injuries. TAC ¶ 44 (Doc. 32, PageID. 1275).

The United States enacted the Clean Air Act (CAA) in 1970 to prevent and control air pollution by way of promoting public health and welfare. 42 U.S.C. § 7401 et seq. The CAA gave the EPA discretion to prescribe National Ambient Air Quality Standards (NAAQS) for any air pollutant for which air quality criteria had been issued after the CAA was enacted on December 31, 1970, and to promulgate regulations establishing emission standards for each category of major sources and

liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."). The United States reserves all rights to argue claims are *Feres* barred, pending further fact development.

area sources of the listed hazardous air pollutants, including benzene, cited in 42 U.S.C. § 7142(b)(1). 42 U.S.C. §§ 7408, 7409, 7412(d)(1).

The States have the primary responsibility for assuring these standards are met. Each State adopts a State Implementation Plan (SIP), with EPA approval, which implements the NAAQS "in each air quality control region (or portion thereof) within such State." 42 U.S.C. § 7410. Additionally, working with the EPA, the States exercise their discretion to create an ambient air monitoring program for a broad range of these hazardous air pollutants and their health risks. 42 U.S.C. § 7412(k)(2). Each State also has the option to apply for partial or complete delegation of the EPA's authorities and responsibilities for these air pollutants emission standards and prevention requirements. 42 U.S.C. § 7412(I)(1). Under this regulatory scheme, Alabama gained primacy to enforce the National Emission Standards for Hazardous Air Pollutants (NESHAPS), effective November 23, 1995, which was incorporated into Chapter 335-3-11 of the ADEM Administrative Code.

**B. Plaintiffs Allege Toxic Environmental Exposure Due to EPA's CERCLA Violations.**

Plaintiffs contend that the EPA is liable under CERCLA for an alleged failure to monitor and remediate hazardous releases. TAC ¶¶ 44, 46, 48A (Doc. 32, PageID. 1275, 1277-79). Congress enacted CERCLA in 1980, providing the EPA broad discretion to promulgate regulations designating hazardous substances and their reportable quantities. 42 U.S.C. § 9601 et seq. Under CERCLA, EPA has broad discretion to evaluate potential response in maintenance of removal and remediation actions to prevent, limit, or mitigate the releases of hazardous substances. 42 U.S.C. § 9604. The definition of "remedial action" includes actions such as "any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment." 42 U.S.C. § 9601(24). The definition of "removal" includes "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances…or the taking

of such other actions as may be necessary to prevent, minimize or mitigate damage to the public health or welfare or the environment." 42 U.S.C. § 9601(23).

Plaintiffs also allege that the EPA failed to take reasonable care in remediating hazardous releases under CERCLA, causing their injuries. Specifically, they allege that the EPA did not act with a duty of care in monitoring and remediating identified contamination at the Dairy Fresh underground-storage-tank site in Alabama by allegedly omitting required monitoring.[3] TAC ¶ 44 (Doc. 32, PageID. 1275-76). Plaintiffs Jeffery Harris, Sharon Denise Fails, and Tyrance Harris also allege that the EPA breached it duties by failing to ensure adequate monitoring of airborne lead from the Master Metals site in Cleveland, as owed to Plaintiffs under Restatement (Second) of Torts § 324(A), adopted by Ohio, alleging "one who undertakes to render services that he should recognize as necessary for the protection of others owes them a duty to exercise reasonable care in performing the undertaking." TAC ¶ 48A (Doc. 32, PageID. 1278-79).

## LEGAL STANDARD

As a threshold matter, the United States moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6), as Plaintiffs' claims are barred by the statute of limitations. "[S]tatutory waivers of sovereign immunity 'are to be construed strictly in favor of the sovereign.'" *Means v. United States,* 176 F.3d 1376 (11th Cir. 1999) (quoting *McMahon v. United States,* 342 U.S. 25, 27 (1951)). The FTCA provides an express period in which a claim can be presented. "[I]n construing the FTCA's statute of limitations, 'we should not take it upon ourselves to extend the waiver beyond that which Congress intended.'" *Dotson v. United States,* 30 F.4th 1259, 1266 (11th Cir. 2022) (quoting *Phillips v. United States,* 260 F.3d 1316, 1318 (11th Cir. 2001)).

---

[3] Despite Plaintiffs alleging that the EPA violated its duties under CERCLA to properly remediate the Dairy Fresh site, the Dairy Fresh site is governed by the Resource Conservation and Recovery Act (RCRA). Plaintiffs have not alleged that the EPA violated any mandatory duties under RCRA.

The United States also moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs failed to allege a claim that is not barred by the discretionary function exception of the FTCA. "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.,* 572 F.3d 1271, 1279 (11th Cir. 2009) (citing *Morrison v. Amway Corp.,* 323 F.3d 920, 925 n. 5 (11th Cir. 2003)). "Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint. When considering such changes, the court must…take the complaint's allegations as true." *Id.*

Finally, the United States moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, as the Complaint lacks allegations sufficient to establish the Court's jurisdiction. "[I]n assessing the merits of a Rule 12(b)(6) motion, the court must assume that all factual allegations set forth in the complaint are true…and all factual allegations, moreover, are to be construed in the light most favorable to the plaintiff." *McCorvey v. United States,* No. 12-00757-KD-C, 2014 WL 4594475 at *3 (S.D. Ala. Sept. 11, 2014). "Even a *pro se* litigant must allege the essential elements of the claim for relief." *Id.* (quoting *Finklea v. United States,* No. Civ. A. 00-286-CBM, 2001 WL 1030005 at *3 (S.D. Ala. Jan. 30, 2001)).

## ARGUMENT

### I. The Statute of Limitations Bars Plaintiffs' Claims.

"The [FTCA] provides that a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim." *United States v. Wong,* 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401(B)). Plaintiffs' claims are barred by the statute of limitations for two reasons. First, Plaintiffs filed their initial Complaint

after the six-month deadline established by the agency's denial of their administrative claim. Second, Plaintiffs failed to present their claims to the EPA within two years after their claim accrued.

**a. Plaintiffs' Claims Are Untimely.**

Plaintiffs' FTCA claims are time-barred because Plaintiffs filed their initial Complaint more than six months after the EPA mailed a letter denying Plaintiffs' administrative claims. The FTCA establishes that a complaint is untimely if it is filed after "six months after **the date of mailing, by certified or registered mail**, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b) (emphasis added). Based on the plain language of the statute, the date the agency mails the denial letter is the operative date from which the six-month period begins. *Dotson,* 30 F.4th at 1268 ("Plaintiffs' FTCA claims are therefore untimely under § 2401(b) because they were filed more than six months after the mailing of the denial letter.") *see also Owens v. United States,* No. 2:08-CV-1198-VEH, 2009 WL 10703796, at n*4 (N.D. Ala. Nov. 24, 2009) ("The six month statute of limitation commences running on the date the denial of a claim is mailed by a federal agency rather than the date on which the claimant receives [it].").

Here, Plaintiff Jeffery Harris filed three administrative claims on July 1, 2025, July 28, 2025, and August 19, 2025, respectively. *See supra* at 2. Plaintiff Jeffery Harris's July 1, 2025, administrative claim asserts only his claims against the EPA. In the July 28, 2025, administrative claim, Plaintiff Jeffery Harris adds additional claimants and asserts that he is the "point of contact" for all listed claimants. In both the July 28, 2025, and August 19, 2025, administrative claims, he states that he is the "leading claimant" submitting on behalf of all Plaintiffs." *Id.* The administrative claims list only one address: 1954 Maryvale St, Mobile, Alabama 36605. *Id.* The EPA mailed a denial letter to Plaintiff Jeffery Harris at the provided address on November 14, 2025. *See supra* at 3. Therefore, the six-month clock began on November 14, 2025, the date the EPA mailed the

denial letter. *See Dotson,* 30 F.4th at 1268. May 26, 2026, the date Plaintiffs initiated this case, falls outside the six-month period during which the Plaintiffs may have filed.

That the denial letter was returned to the EPA as undeliverable on December 2, 2025, is of no consequence. *See supra* at 3. The law is clear that the relevant date is "the date the denial of a claim is mailed by a federal agency rather than the date on which the claimant receives [it]." *Owens,* 2009 WL 10703796, at n*4. The Sixth Circuit is instructive here. In *Jackson v. United States,* the agency at issue mailed their denial letter on March 8, 2011, and it was returned to the agency, marked as "Not Deliverable as Addressed. Unable to Forward[]" on March 23, 2011, as the Plaintiff's attorney changed offices. *Jackson v. United States,* 751 F.3d 712, 714 (6th Cir. 2014). In *Jackson,* the agency took no further action. Plaintiff then filed her complaint past the six-month deadline, and when the United States moved to dismiss, argued that the "'undeliverable notice of denial' does not trigger the six-month limitation window outlined in the FTCA." *Id.* at 717. The Sixth Circuit dismissed this argument, stating the "FTCA unambiguously states that the six-month statute limitation window runs 'from the date of mailing[]'" and "[a]s our sister circuits have noted, the FTCA does not require that the claimant receive the denial letter in order to commence the six-month limitation period."[4] *Id.* While the EPA emailed a copy of the denial letter to Plaintiff Jeffery Harris on January 12, 2026, *see supra* at 3, that email was a courtesy and not necessary or instructive of the six-month deadline for Plaintiffs to file their initial complaint. In fact, because the EPA emailed Plaintiff Jeffery Harris a copy of the initial denial letter, Plaintiff Jeffery Harris was made aware of the date the denial letter was initially mailed.

---

[4] The United States also notes that the Eleventh Circuit has made similar decisions, though not directly on point. *See Dotson,* 30 F.4th at 1268 (finding that the date the agency mailed the denial letter was still the operative date where the denial letter was sent to plaintiffs' previous attorney instead of plaintiffs' current counsel).

Plaintiffs' claims are not appropriate for equitable tolling. Equitable tolling would only be appropriate here if Plaintiffs untimely filed because of extraordinary circumstances outside their control. *Arce v. Garcia,* 434 F.3d 1254, 1261 (11th Cir. 2006). Plaintiffs claim that Plaintiff Jeffery Harris "left [his home] in the first week of November 2025" and during the time period where the letter was mailed out, "he had no address at which mail could reach him." TAC ¶¶ 8, 8A (Doc. 32, PageID. 1263). However, Plaintiff Jeffery Harris failed to show any steps that were taken to preserve each Plaintiffs' right to timely file. *Dotson,* 30 F. 4th at 1269 (finding that plaintiffs "failed to demonstrate entitlement to equitable tolling as they had not shown an extraordinary circumstance that warranted tolling and had not indicated what steps were taken, if any, to protect their right to timely file th[e] action." (quotations omitted)); *see also Peak v. United States,* 2026 U.S. App. LEXIS 1909 at *7 ("The burden of diligence in complying with the filing deadline is on the plaintiff, not the [defendant]."). Plaintiff Jeffery Harris failed to provide the EPA with the address of any other claimant. He failed to implement a mail hold with the United States Postal Service. Finally, he failed to alert the EPA that he was no longer at the address listed on his administrative claims. *See supra* at 3. Plaintiffs were on notice of the denial letter requiring them to file their initial complaint within six months. There was ample opportunity to request the date of mailing from the EPA, whom they were in communication, to understand when they needed to file their complaint. Plaintiffs assert no extraordinary circumstances outside of their control or evidence of reasonable diligence in preserving their claims for the Court to toll the limitations period. For these reasons, Plaintiffs' claims are untimely and should be dismissed.

**b. Plaintiffs Failed to Timely File Their Administrative Claim within the Two-Year Statute of Limitations.**

An administrative tort claim must be presented "within two years after such claim accrues." 28 U.S.C. § 2401(b). "The statute of limitations begins when the injury is inflicted, not when the

plaintiff learned that they have been injured." *Auger v. United States,* 382 F. App'x 901, 902 (11th Cir. 2010); *see also Diaz v. United States,* 165 F.3d 1337, 1339 (11th Cir. 1999) ("The general rule is that a claim under the FTCA accrues at the time of injury.") "FTCA claims accrue either at the time of injury or when the plaintiff has, or with reasonable diligence should have, discovered the facts critical to his or her injury, whichever is earlier." *Fermo v. United States Dep't of Homeland Sec.,* 2026 U.S. Dist. LEXIS 117740 at *7 (S.D. Ala, May 28, 2026) (Beaverstock, J.) (quoting *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 189 (2d Cir. 1999) (quotations omitted)); *see also Pinson v. United States,* No. 21-14032, 2022 WL 16707956 *3 (11th Cir. Nov. 4, 2022) (A claim accrues when "the facts which would support a cause of action are apparent and should be apparent to a reasonably prudent person." (quoting *Rozar v. Mullis,* 85 F.3d 556, 561-62 (11th Cir. 1996) (quotations omitted)).

As with the six-month statute of limitations, the two-year statute of limitations can be subject to equitable tolling. *Robinson v. United States,* 327 Fed. App'x 816, 819 (11th Cir. 2007). "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are beyond his control and unavoidable even with diligence." *Arce,* 434 F.3d at 1261 (11th Cir. 2006) (quoting *Sandvik v. United States,* 177 F.3d 1269, 1271 (11th Cir. 1999)); *see also Cadet v. Fla. Dep't of Corr.,* 853 F.3d 1216, 1226 (11th Cir. 2017) ("[T]he reasonable diligence and extraordinary circumstances requirements are not blended factors; they are separate elements, both of which must be met before there can be any equitable tolling."). However, Plaintiffs have "the burden of proving such extraordinary circumstances exist." *Dotson,* 30 F.4th at 1268. "Excusable neglect" does not amount to 'extraordinary circumstances.' *Id.* at 1269.

All Plaintiffs' claims accrued well before the two-year statute of limitation. Plaintiffs' injuries were inflicted decades before they filed their administrative claim. In the case of Plaintiff Holly

Powe, the basis of her claim is congenital cervical fusion and coccyx deformity that formed while her mother was pregnant with her in 1974, which she alleges was documented by CT scan on December 11, 2015, and January 20, 2016. TAC ¶¶ 5, 13 (Doc. 32, PageID. 1261, 1265). Her claims are therefore barred.

Plaintiff Tyrance Harris claims that he suffered from peripheral neuropathy, renal stress, chronic migraines, atopic dermatitis, psoriasis, and anemia caused by exposure to lead, benzene, and PAHs during the gestational period in 1975 and his residency in Cleveland, Ohio from 1984 to 1997, when he was allegedly exposed to lead contamination from the Master Metals Superfund site. TAC ¶ 4, 48 (Doc. 32, PageID. 1261, 1278). Similar to Plaintiff Holly Powe's claims, this means that his injuries were inflicted decades before Plaintiff Jeffery Harris submitted an administrative claim on his behalf, in 2025. Plaintiff Sharon Fails claims that she is afflicted with systemic lupus erythematosus, renal dysfunction, hematuria, and vascular fragility due to exposure to lead, benzene, and PAHs in the Africatown/Prichard corridor of Mobile, Alabama, and her time in Cleveland, Ohio. TAC ¶ 3 (Doc. 32, PageID. 1260-61). Any injuries inflicted due to exposure in Cleveland, Ohio, would be time-barred since she lived there from 1984 to 1997, well before the two-year statute of limitation.

Plaintiff Jeffery Harris claims multiple injuries across multiple time periods. First, he claims a congenital hemivertebra and congenital inguinal hernia, both of which developed during the gestational period in 1980, while his mother was living in the Africatown/Prichard corridor and allegedly was exposed to lead. TAC ¶ 12 (Doc. 32, PageID. 1264). Plaintiff Jeffery Harris claims that he was unaware of this spinal injury until the defect was documented by MRI on February 28, 2024, and then definitively identified by MRI and diagnosed on January 29, 2026. TAC ¶ 12 (Doc. 32, PageID. 1264-65). He does not provide a reason for why he waited until 2024 to identify the

basis of his spinal jury. He also alleges injuries due to exposure in Cleveland, Ohio, between 1984 and 1997.

Even if the Court were to find that Plaintiffs' injuries didn't accrue at their time of injury, all Plaintiffs' claims are still time-barred as Plaintiffs, with reasonable diligence, should have discovered the critical facts of their injury. *See Fermo,* 2026 U.S. Dist. LEXIS 117740 at *7. Plaintiffs themselves provide documentation of the very notice of potential exposure they deny awareness of prior to late 2024 and March 2025, proving that with reasonable diligence they could have discovered the critical facts of their injuries much earlier than 2024. TAC ¶ 40-42 (Doc. 32, PageID. 1274-75). Plaintiffs allege local residents treated the Africatown/Prichard corridor's monitor as the area's lead check dating back to the 1980s and the 1990s. TAC ¶¶ 44(b) (Doc. 32, PageID. 1276-77). Plaintiffs go on to state that they received their information from the EPA's Air Quality System created in 1996, the EPA's "computerized system for storing and reporting of information related to ambient air quality data." 40 C.F.R. § 58.1. TAC ¶ 45 (Doc. 32, PageID. 1277). Plaintiffs were aware of potential environmental exposure since at least the installation of the Cox Street Monitor in 1981, and as such, with reasonable diligence could have concluded the potential cause of their injuries long before the late 2024 and 2025 time period they cite in the TAC ¶¶ 39-40 (Doc. 32, PageID. 1274). By his own account, Plaintiff Jeffery Harris alleges nerve pain that he associated with PAH exposure during his incarceration at Escambia County Jail and that these "grievances are documented in Case 1:17-cv-00300-CG-B, Document 38-3, *filed October 29, 2018*, in this Court." TAC ¶ 31 (Doc. 32, PageID. 1270) (emphasis added). Plaintiffs had all the information before them to have discovered that their injuries are allegedly connected to toxic environmental exposure.

Plaintiffs instead mistakenly apply the Eleventh Circuit's interpretation of the two-year statute of limitations of medical malpractice claims in this case, stating that their claims fall within the two-year statute of limitations, because they were unaware of any environmental cause of their injuries until late 2024 to March 2025. TAC ¶¶ 39-42 (Doc. 32, PageID. 1274-75); *see Ramos v. U.S. Dep't of Health & Hum. Servs.,* 429 Fed. App'x. 947, 951 (11th Cir. 2011) ("[A] medical malpractice claim accrues when the plaintiff knows both the existence and cause of his injury." (quoting *United States v. Kubrick,* 444 U.S. 111, 113 (1979)(quotations omitted)). However, the Eleventh Circuit distinguishes between general tort claims and medical malpractice claims under the FTCA, stating that "the two-year statute of limitations period typically begins to run when the plaintiff is injured, although a medical malpractice claim accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant." *Echemendia v. United States,* 710 Fed. App'x. 823, 826 (11th Cir. 2017) (quoting *Price v. United States,* 755 F.2d 1491, 1494-95 (11th Cir. 1985)(quotations omitted)). Plaintiffs are asserting general negligence tort claims, and as such, Plaintiffs' claims did not begin to accrue when they could connect the alleged environmental toxic exposure to the EPA's alleged actions. Accordingly, the statute of limitations bars the Complaint. It cannot be saved by amendment, and the Court should dismiss the Complaint with prejudice.

**II. Plaintiffs Fail to Plead a Facially Plausible Claim Sufficient to Establish Jurisdiction.**

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claims showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007) (quotations omitted)). To survive a motion to dismiss, a complaint must present a facially plausible claim where the "plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Eleventh Circuit has found that *pro se* pleadings "are held to be a less stringent standard than pleadings drafted by attorneys, and will, therefore, be liberally construed." *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998). However, *pro se* pleadings must still include "sufficient factual allegations that raise a right to relief above the speculative level." *Gilchrist v. United States,* No. 121CV00652LSCNAD, 2023 WL 4537004 *5 (N.D. Ala. June 13, 2023) (quoting *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (quotations omitted)).

The Complaint fails to meet Fed. R. Civ. P. 8(a)(2)'s pleading standard as it does not identify a mandatory and specific directive by which the discretionary function exception of the FTCA would not apply. Plaintiffs allege that the EPA failed in their duty under federal statutes and regulations[5] "to exercise reasonable care in monitoring air quality, investigating known contamination, warning affected communities, and remediating hazardous releases." TAC ¶ 44 (Doc. 32, PageID. 1275). However, this allegation is a conclusory statement that is not based on any evidence other than the fact that Plaintiffs may have been exposed to lead, benzene or PAHs. This is not a cognizable legal theory.

---

[5] The United States also notes that Plaintiffs fail to establish an analogous private liability in either Alabama or Ohio. Plaintiffs' allegations are that the EPA breached a duty of care under federal statutes—the Clean Air Act and CERCLA. Plaintiffs' failure to identify a state-law tort, which establishes a state-law duty, bars them from pursuing a claim under the FTCA. 28 U.S.C. § 1346(b)(1) (The FTCA waives sovereign immunity where the United States would be liable for injury to the claimant "if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred."); *Smith v. United States,* 14 F.4th 1228, 1233 (11th Cir. 2021) ("[T]o trigger liability under the Federal Tort Claims Act, a federal employee's conduct must be independently tortious under applicable state law." (citation and quotations omitted)).

**a. Plaintiffs' Claims Are Barred by the Discretionary Function Exception.**

The EPA has discretion under the CAA and CERCLA to decide when and how to monitor, assess, and/or remediate for air pollutants such as lead, benzene, PAHs and other hazardous waste emissions. The FTCA provides a congressional waiver to sovereign immunity for certain tort claims against the United States. 28 U.S.C. § 1346(b)(1). However, this waiver is limited. The United States does not waive sovereign immunity where claims are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved by abused." 28 U.S.C. § 2680(a). The Complaint fails to meet Fed. R. Civ. P. 8(a)(2)'s pleading standard because it does not identify a mandatory or specific directive by which the discretionary function exception of the FTCA applies.

The Court must apply a two-prong test to determine whether the discretionary function exception applies. *Shivers v. United States,* 1 F.4th 924, 928 (11th Cir. 2021). "First, a court must determine whether the conduct challenged by the plaintiff was 'discretionary in nature'—that is, whether it involved 'an element of judgment or choice.'" *Id.* at 929 (quoting *United States v. Gaubert,* 499 U.S. 315, 322 (1991)). Second, the Court must evaluate whether the governmental decisions are based on considerations of public policy. *Berkovitz v. United States,* 486 U.S. 531, 537 (1988).

**i. The EPA Has No Mandatory and Specific Directive on How to Monitor, Assess or Remediate Air Pollutants and/or Hazardous Substances.**

Under the Supreme Court's test, the Court must determine whether the EPA's challenged actions were governed by a mandatory and specific statute, policy, or regulation. *Berkovitz,* 486 U.S. at 536 (finding that there is no "element of judgment or choice" where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow"). Plaintiffs must identify a "federal statute, regulation, or policy that sets a 'fixed or readily

ascertainable standard' by which to gauge the adequacy of the employee's rendering of this decision." *Zelaya v. United States,* 781 F.3d 1315, 1330 (11th Cir. 2015) (finding that the United States met the first prong of the discretionary function exception test where plaintiffs failed to identify a relevant federal statute, regulation, or policy). Plaintiffs claim that the discretionary function exception does not apply because CERCLA uses mandatory "shall" language and 40 C.F.R. § 104(a) imposes mandatory monitoring requirements on the EPA. TAC ¶ 46 (Doc. 32, PageID. 1277-78). This is an improper reading of CERCLA and of the EPA's regulations regarding monitoring.

First, CERCLA provides a discretionary framework for investigating and responding to releases of hazardous substances, pollutants and contaminants. Thus, CERCLA only applies to Count II of the Complaint—the negligent failure to monitor and control emissions in Cleveland, Ohio. 42 U.S.C. § 9601et seq. Under CERCLA, the EPA has broad discretion to "provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment." 42 U.S.C. § 9604(a)(1). The statute does not prescribe a specific course of action in conducting remedial or removal acts. Instead, CERCLA rather sets forth general rules for evaluating whether a response is appropriate and then, in selecting a response. *See, e.g.,* 42 U.S.C. §§ 9604(a). under U.S.C. § 9621(b). In the case of the settlement of the Master Metals site, the EPA has discretion to "enter into an agreement with any person…to perform any response action." 42 U.S.C. § 9622(a). Additionally, the EPA has broad discretion to determine the amount of any civil penalty per CERCLA, by taking into account several factors. 42. U.S.C. § 9609(3). Moreover, the EPA does not have a directive "mandating the placement of

monitors on removal sites[.]" Exhibit 8, Karen Kirchner Declaration ¶ 11. The EPA "evaluat[es] and determine[es] whether monitoring is required, and if so the type and level of monitoring needed and where those monitors should be placed." Exhibit 8, ¶ 9.

Second, Plaintiffs claim that the EPA's Monitored Natural Attenuation (MNA) policy (OSWER Directive 9200.4-17P) mandates performance monitoring for any MNA remedy and the EPA failed to fulfill this requirement as they did not complete vapor monitoring[6]. TAC ¶¶ 44A(a), 45 (Doc. 32, PageID. 1276-77). The EPA did not fail to fulfill any requirement as the EPA approved Alabama's underground storage tank (UST) program, giving primary implementation and enforcement authority to the state of Alabama on January 24, 1997, effective March 25, 1997. Alabama is in charge of remediating the Dairy Fresh site and enforcing the MNA remedy. Moreover, the MNA policy does not mandate specific types of monitoring, instead, stating "[f]lexibility for adjusting the monitoring frequency over the life of the remedy should also be included" and "[a]t a minimum, the monitoring program should be sufficient to enable a determination of the rate(s) of attenuation." OSWER Directive 9200.4-17P at 23. The language in the directive evidences that the EPA regulations imagined that the approved state agency or the EPA employees enacting the MNA policy would have an element of judgment or choice in developing remediation plans. There is no prescribed course of action. *Foster Logging, Inc. v. United States,* 973 F.3d 1152, 1158 (11th Cir. 2020) ("The inquiry focuses on whether the controlling statute or regulation mandates that a government agent performs his or her function in a specific manner." (quotations omitted)).

---

[6] Plaintiffs failed to cite any requirement for vapor monitoring for MNA remedies in OSWER Directive 9200.4-17P or any other statute, regulation or policy.

Third, while the EPA's regulations require that the agency measures ambient air quality and reports ambient air quality data, they do not mandate a specific course of action for how, when, or where that monitoring is to be conducted. 40 C.F.R. § 58.2. In fact, it has been largely left up to the States to develop monitoring and enforcement programs. 42 U.S.C. § 7412(I)(1); 40 C.F.R. § 58.3. Additionally, the monitoring network referred to in 40 C.F.R. §§ 58:10-58:16, does not mandate that the EPA or the States install air monitors in every location where there is any anticipation of lead. In fact, monitoring is largely discretionary. Exhibit 9, Karen Wesson Declaration ¶ 10 ("[T]he CAA does not otherwise specify details on what devices, methods, systems, and procedures are appropriate and necessary to monitor ambient air quality. This leaves discretion to the EPA to interpret the CAA provisions and otherwise leaves state discretion in how to meet applicable CAA and regulatory requirements."). The CAA and the EPA's regulations were enacted to work with State and local officials to create an ambient air monitoring program that meet the "current and emerging needs" of the specific ambient air network at issue. Exhibit 9 ¶ 11 ("EPA and its partners in State, local, and tribal air monitoring programs work closely to design and implement ambient air monitoring networks to meet multiple monitoring objectives…Not all counties have monitors, and those that do have monitors do not necessarily measure every pollutant. Of the pollutants measured, not all are measured every day."); 42 U.S.C. § 7412(k)(2). The EPA and the States have discretion on developing each state's ambient air network. Additionally, each State has the option to develop and submit to the EPA for approval and implement an enforcement program that would give them primacy or partial delegation of the EPA's authorities and responsibilities to enforce air pollutant emission standards. 42 U.S.C. § 7412(I)(1). ADEM therefore has had primacy over monitoring and remediation of air pollutants since November 23, 1995.

**ii. The EPA's Monitoring and Remediation of Air Pollutants and Hazardous Substances Implicate Policy Considerations.**

The second part of the discretionary function test requires the Court to look at whether the EPA's discretionary decisions related to its monitoring and remediation of air pollutants and hazardous substances "implicated important policy considerations." *Foster Logging, Inc.,* 973 F.3d at 1158. Plaintiffs have the burden to allege "facts showing that a government employee engaged in conduct that, by its nature, is not the kind of conduct that is based on or grounded in considerations of public policy." *Id.* at 1159 (quotations omitted). "When an established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert,* 499 U.S. 315, 324 (1991).

Plaintiffs' claims rest on several alleged omissions by the EPA that are facially susceptible to policy analysis. To the extent that Plaintiffs allege that the EPA failed to properly monitor and remediate the Master Metals site in Cleveland, Ohio, the Eleventh Circuit has found that the "EPA's discretion under CERCLA is grounded in public policy," as the statute "directs the EPA to take into consideration, among other things, 'the public health or welfare or the environment' in deciding the appropriate remedial response." *Gadsden Indus. Park LLC v. United States,* 756 Fed. App'x. 945, 950 (11th Cir. 2018). Specifically, the EPA evaluates "worker and community safety, including the likelihood of exposure to lead and other contaminants to the surrounding population" when determining "what should be monitored and where monitors should be placed." Exhibit 8, ¶ 10. Further, to the extent that the EPA failed to warn Plaintiffs of the potential presence of hazardous substances, that failure to warn "members of the public about the dangers of exposure to a particular hazard is susceptible to the weighing of policy considerations, and thus, within the

discretionary function exception." *Bobo v. Agco Corp.,* 981 F. Supp. 2d 1130, 1149 (N.D. Ala. 2013).

In terms of air monitoring, Plaintiffs allege that the EPA breached its duty to Plaintiffs by (1) "failing install any lead air monitor during Plaintiffs' gestations despite known industrial sources"; (2) installing a lead air monitor on Cox Street in 1981 after their births; (3) failing to replace the Cox Street monitor in 1990 after it was permanently discontinued; (4) "approving MNA at UST sites without vapor monitoring"; (5) failing to operate NATTS, NCORE, PAMS, or IMPROVE monitoring sites in Mobile; (6) failing to maintain monitoring in Mobile (a majority-Black community), while maintaining monitoring in Troy (a majority-White community); (7) applying inconsistent enforcement standards; and (8) failing to warn Plaintiffs of known contamination. TAC ¶ 45 (Doc. 32, PageID. 1277). Plaintiffs also allege that the EPA failed to "ensure adequate monitoring of airborne lead from Master Metals," despite stating the Complaint that "[a]ir monitors recorded concentrations including readings of 93.54 $\mu g/m^3$" and that an April 27, 1993, EPA Ambient Lead Report "documented daily lead concentrations ranging 0.86-117 $\mu g/m^3$ at monitors near Master Metals." TAC ¶¶ 27, 48 (Doc. 32, PageID. 1269, 1278).

These decisions are grounded in public policy considerations. The EPA works with the States to develop the State's ambient air network monitoring plans, and this discretionary process considers "providing air pollution data to the general public in a timely manner", "emission strategy development", "supporting air pollution research data" and the "current and emerging needs of the network." Exhibit 9, ¶ 11. The EPA also defers to the States "in accounting for logistics and potential for population exposure in establishing the lead monitoring network". *Id* at ¶ 14. These are all policy considerations. The EPA also has the authority to approve state UST programs, giving states primary implementation and enforcement authority of underground storage tanks

under the Solid Waste Disposal Act. 42 U.S.C. § 6991c; see also 40 CFR Part 281. The very fact that the EPA has afforded this discretion means that Congress anticipated that there would be public policy considerations implicated in the implementation and enforcement of emission standards and UST standards. *Gaubert,* 499 U.S. at 324-25.

Plaintiffs claim the policies considered by the EPA are improper in response to the second part of the *Gaubert* test. TAC ¶ 7 (Doc. 32, PageID. 1262). However, the discretionary-function exception was carved out of the FTCA's waiver of sovereign immunity to prevent litigation into whether the underlying policy or conduct was proper. *Cohen v. United States,* 151 F.3d 1338 (11th Cir. 1998) ("The purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."); *See also Martin v. United States,* 2026 U.S. App. LEXIS 30717 (Oct. 7, 2026) ("Congress could have adopted language that carved out certain behavior from this exception—for example, grossly negligent behavior, intentional behavior, or behavior that rises to the level of constitutional violation. But Congress did not do so, and it is Congress that uniquely decides what should fall within the waiver of sovereign immunity.").

The Complaint does not allege facts sufficient to show that Plaintiffs' claims are facially outside the discretionary function exception. Accordingly, the Complaint does not meet Fed. R. Civ. P. 8(a)(2)'s pleading standards for pleading a facially plausible claim for a grant of relief and should be dismissed.

## CONCLUSION

For the reasons stated herein, the United States respectfully requests that the Court dismiss Plaintiffs' claims on two independent grounds that they (1) are barred by statute of limitations and (2) failed to plead a facially plausible claim that is not barred by the discretionary function exception.

DATED: November 9, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
JONATHAN GUYNN
Deputy Assistant Attorney General
J. PATRICK GLYNN
Director
LACRESHA JOHNSON
Assistant Director

*/s/ I. Priyanka Ghosh*

I. Priyanka Ghosh (DC Bar No. 1779863)
Kailey Silverstein
Trial Attorneys
Civil Division, Torts Branch
P.O. Box 340
Washington, D.C. 20044

Attorneys for the United States of America

**CERTIFICATE OF SERVICE**

I certify that on November 9, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such to Plaintiff Jeffery Jerome Harris, and I certify that the following document has been mailed by United States Postal Service, postage prepaid, to the following non-CM/ECF participants:

Sharon Denise Fails
1900 Shelton Beach Road Ext., Apt 1004
Mobile, AL 36618

Tyrance Harris
3855 Autumndale Drive
Mobile, AL 36618

Holly Powe
1117 North Dr. Martin Luther King Jr. Drive
Mobile, AL 36610

*/s/ I. Priyanka Ghosh*
I. PRIYANKA GHOSH
Trial Attorney, Torts Branch
Environmental Tort Litigation Section
DC Bar No. 1779863